IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA

LUCRETIA HORNSBY,
ANMARIE YOUNG, PRESTON
YOUNG, REBECCA DEAN,
DAWN HAMMOCK, CELINA
JORDAN, TABITHA ARLEDGE,
ERICA MILLER, OCIE BUTLER,
and DARRELL THOMAS, on behalf
of themselves and all others similarly
situated,

                    *Plaintiffs*,

        v.

MACON COUNTY GREYHOUND
PARK, INC.,  MCGREGOR
ENTERPRISES and MILTON E.
MCGREGOR,

                    *Defendants*.

Civil Action No. 3:10-CV680
**CLASS ACTION**

## <u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>

COME NOW THE PLAINTIFFS in the above captioned lawsuit, and file

this Motion requesting that the Court enter its order as follows:

a)  Certifying this case as a class action pursuant to Rule 23, *Federal Rules

of Civil Procedure* for the class defined in the Complaint and in this motion;

b)  Appointing Lucretia Hornsby, Anmarie Young, PrestonYoung, Rebecca

Dean, Dawn Hammock, Celina Jordan, Tabitha Arledge, Erica Miller, Ocie Butler,

and Darrell Thomas as class representatives;

1

c)  Appointing Philip Dale Segrest, David L. Selby II, David P. Martin and

Robert S. Thompson and their respective firms, as class counsel.

### EVIDENTIARY SUBMISSIONS

1)  This motion is supported by the following evidentiary submissions which

plaintiffs will file separately:

| | |
|---|---|
| Exhibit 1 | Deposition of  Lucretia Hornsby |
| Exhibit 2 | Deposition of Anmarie Young |
| Exhibit 3 | Deposition of Preston Young |
| Exhibit 4 | Deposition of Rebecca Dean |
| Exhibit 5 | Deposition of Dawn Hammock |
| Exhibit 6 | Deposition of Celina Jordan |
| Exhibit 7 | Deposition of Tabitha Arledge |
| Exhibit 8 | Deposition of Erica Miller |
| Exhibit 9 | Deposition of Ocie Butler |
| Exhibit 10 | Deposition of Darrell Thomas |
| Exhibit 11 | Affidavit of  Myra Ann Sides |
| Exhibit 12 | Affidavit of Judy Weekes-Walker |
| Exhibit 13 | Affidavit of Nancy Yarenko |
| Exhibit 14 | Affidavit of Eric Wayne Collins |

| Exhibit 15 | Affidavit of LaToya Hollingsworth |
|---|---|
| Exhibit 16 | Affidavit of Hulet Beth Hornsby |
| Exhibit 17 | Affidavit of Toria Howard |
| Exhibit 18 | Affidavit of April Langford |
| Exhibit 19 | Affidavit of Debra Bowen Smith |
| Exhibit 20 | Affidavit of Costio D'Geno Tutt |
| Exhibit 21 | Affidavit of Edward Williams |
| Exhibit 22 | Affidavit of Dana Short |
| Exhibit 23 | Declaration Under Penalty of Perjury Pursuant to 28 U.S.C.A. § 1746 by John Michael Segrest |

2)  Plaintiffs have been unable to proceed with depositions because the defendant Milton E. McGregor and his personal attorney,  Fred D. Gray, Sr. have been involved in extensive litigation in this court, and Mr. Gray wants to be present for depositions in this case.  Plaintiffs submit that the evidence that is already available provides a sufficient basis for certification of the class, but respectfully request that they be allowed to supplement the evidentiary support for this motion as discovery proceeds.

### THE ERISA CAUSE OF ACTION

3)  Plaintiffs brought this complaint as a Class Action against the defendants based on the provisions of the Employee Retirement Income Security Act (ERISA)

(Title 29 United States Code  1001 et seq.), including provisions of the

Consolidated Omnibus Budget Reconciliation Act of 1985 (29 USC 1161 et seq.)

(COBRA) and the American Recovery and Reinvestment Act of 2009 (Public Law

111-5), (ARRA).

4)    The plaintiffs are *participants* and *beneficiaries* under a *health*

*insurance plan sponsored* and *administered* by the defendants, as those terms are

defined by ERISA.  29 USC § 1002.

5)    ERISA requires that when the employment of an employee who is

participating in a group health plan is terminated, the employer, sponsor, and plan

administrator must give notice of eligibility for COBRA coverage. [29 USCA §

1166(4)].

6)    ARRA required the defendants to provide a discount of 65% on

COBRA premiums for employees whose employment was involuntarily

terminated and who elected to receive COBRA coverage during a period of time

beginning September 1, 2008 and ending May 31, 2010.  *See* American Recovery

and Reinvestment Act.  (See ARRA, *supra*).

7)    ARRA required that the COBRA notice include information about the

right of any employee who was involuntarily terminated to a 65% discount on

COBRA premiums pursuant to ARRA.  "In the case of notices provided under

section 606(a)(4) of the Employee Retirement Income Security Act of 1974 (29

U.S.C. 1166(4), . . .with respect to individuals who during the period described in paragraph (3)(A), become entitle to elect COBRA continuation  coverage, the requirements of such sections shall not be treated as met unless such notices include an additional notification to the recipient of (I) the availability of premium reduction with respect to such coverage under this subsection….” ARRA, Section 3001(a)(7).  ERISA Section 606(a)(4)  [29 U.S.C. 1166(4)] is the provision that requires COBRA notices be given to terminated employees who are plan participants.

8)    On behalf of themselves and other persons similarly situated, the plaintiffs claim the statutory penalty of up to $110 per day per plaintiff that arises because of the defendants' failure to give COBRA notices, including failure to provide information in COBRA notices that is required by ARRA.

9)    The plaintiffs also seek other relief as provided in 29 USC § 1132, all as set forth in the Amended Complaint.  The claims of the Complaint are claims created by ERISA.   Federal district courts have exclusive jurisdiction of statutory penalty actions commenced pursuant to ERISA.

## FACTUAL BACKGROUND

10)    Plaintiffs and all putative class members were employed by Macon County Greyhound Park, Inc., (hereinafter referred to as VictoryLand).  VictoryLand provided a group health insurance plan (the plan).

11)  Each Plaintiff and putative class member participated in VictoryLand's group health insurance plan.  Each was a participant in and beneficiary of the plan.

12)  The employment of each plaintiff and class member was terminated between the dates of September 1, 2008 and May 31, 2010.  As a result of the terminations, each of the plaintiffs lost the health insurance coverage that had been provided by VictoryLand's group plan.  (See depositions of the plaintiffs and other evidentiary submissions in support of this Motion.)

13)  As the employer, VictoryLand, was sponsor and one of the administrators of the plan.  [See Exhibit 11, the affidavit of Myra Ann Sides, with *Health Benefits Plan* booklet (hereinafter referred to as the "plan booklet") attached] .  "The plan sponsor and plan administrator is the employer."  (p. 47, plan booklet).

14)  McGregor Enterprises (McGregor) is also designated as plan administrator.  (p. 49 &50 Plan Booklet).  Because McGregor Enterprises is also the plan administrator for Jefferson County Racing Association, it is a trade name for Milton E. McGregor, who owns a controlling interest in both entities.

15)  VictoryLand and McGregor did not provide any of the plaintiffs with proper notice of the availability of continued insurance coverage (COBRA) as required by ERISA that included the information that Plaintiffs were entitled to a 65% discount on COBRA premiums required by ARRA.  (See depositions of the

plaintiffs and affidavits  and other evidentiary submissions in support of this Motion.  (See Dawn Hammock deposition, page 35; Anmarie Young deposition, page 30; Ocie Butler, Jr., deposition, pages 17, 18, and 79; deposition of Darrell Thomas, page 36; deposition of Preston Young, page 27; deposition of Erica Miller, pages 34 through 37; deposition of Rebecca Dean, pages 37 and 38; deposition of Lucretia Hornsby, pages 43 through 46; deposition of Tabitha Arledge, pages 37, 38, 70 through 72; deposition of Celina Jordan, page 37).

16)  Throughout the period of time that ARRA was in effect, VictoryLand had no established policy requiring that COBRA notices be provided as required by ERISA and ARRA.  (See Exhibit 11, Affidavit of Myra Ann Sides).

17)  On January 5, 2010, VictoryLand laid off 225 employees, and on February 4th 2010, it closed and laid off 1800 employees. (See Exhibit 23, Declaration Under Penalty of Perjury Pursuant to 28 U.S.C.A. § 1746 by John Michael Segrest).

18)  Hundreds of former employees are without insurance coverage and have not been afforded the opportunity to make informed decisions concerning health insurance because of the defendants' intentional failure to comply with ERISA, COBRA, and ARRA.

## EGREGIOUS CONDUCT
## EXPERIENCED BY THE CLASS
## SUPPORTING THE CIVIL PENALTY

19)  The violation of ERISA's requirements occurred with regard to every putative class member in substantially the same manner, resulted from the same decisions by VictoryLand, and affected each of the class members in the same way.  The claims for damages of the named plaintiffs are typical of all of the class members.  Based on an examination of evidence already available to them and information that they expect to develop in the process of discovery, Plaintiffs can prove egregious conduct on the part of defendants, including the following facts:

a)  The defendants knew of their obligation to furnish COBRA notices (See Exhibit 11, affidavit of Myra Ann Sides and provisions of the plan booklet);

b)  The defendants knew of their obligation to provide a credit or subsidy of 65% of any COBRA premiums for any employee entitled to COBRA coverage because of involuntary termination of employment (See Exhibit 11, affidavit of Myra Ann Sides);

c)  The defendants knew of their obligation to furnish information to the plaintiffs concerning the ARRA discount for COBRA premiums (See Exhibit 11, affidavit of Myra Ann Sides);

d)  The defendants deliberately decided not to give COBRA notices to the employees; (See Exhibit 11, affidavit of Myra Ann Sides).

## DEFINING THE CLASS

20)  Plaintiffs propose the following class definition:

Any employee of Victoryland (or qualified beneficiary of the plan) who was voluntarily or involuntarily terminated from employment

between the dates of September 1, 2008 and May 31, 2010 who participated in the plan to whom defendants failed to give proper notice of COBRA coverage eligibility and/or proper notice of eligibility for a 65% discount of COBRA premiums as required by ERISA and ARRA.

Excluded from the class are the following:

      a)  The officers and directors of any of the defendants;

      b)  Any judge or judicial officer assigned to this matter or his or her immediate family;

      c)  Any legal representative, successor, or assign of any excluded persons or entities.

21)  The class definition is calculated to include all employees who were participating in the employer sponsored group health insurance plan who lost their employment at VictoryLand during the period of time that ARRA was in effect and who did not receive adequate COBRA notice.

## PROPER CLASS DEFINITION

22)  A good class definition describes the class in objective terms capable of membership ascertainment without regard to the merits of the proposed class members claims or the particular relief they seek.  See *Herbert B.  Newberg&Alba Conte, Newberg on Class actions, Fourth, § 6.14 (3d ed. 1994).*  A proposed class must be defined in such a way that the court can determine in a tangible way whether a particular individual is or is not a member of the class. *Pottinger v. City of Miami.* 720 F. Supp 955 ,958 (S.D.Fla. 1989). Typical elements of a proper class

9

definition include "(1) specifying a particular group that was harmed during a particular time frame, in a particular location, and in a particular way; and (2) facilitating the court's ability to ascertain membership in some objective manner." *Bentley v. Honeywell Int'l, Inc.* 223 F.R.D. 471, 477 (S.D. Ohio 2004).

23)   The class proposed by plaintiffs in the present case has been clearly defined so that the court can determine membership in the class.  The proposed definition "specifies a group that was harmed during a particular time frame, in a particular location, and in a particular way."  Records that the employer was required to keep, and that must be produced in appropriate discovery, will make it easy for the court to ascertain the identity of every member of the class.  The proposed class definition fully satisfies the requirements of Rule**.**

### STANDARD FOR CLASS CERTIFICATION

24)   Rule 23 (a) posits four general prerequisites for certification of a class action, including (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  This action is properly certifiable as a class action pursuant to Rule 23(a) because: (1) the class is so numerous that joinder is impracticable; (2) the primary questions of law and fact are common to all the class members; (3) Plaintiffs' claims are typical of those of the class; and (4) Plaintiffs are adequate class representatives.

25)  Rule 23 (b) adds requirements to the general requirements listed in Rule

23(a), and defines *types* of class actions.  The type of Class Action creates differing

requirements concerning notice and the procedures that apply.  Plaintiffs allege

that certification pursuant to Rule 23 (b) (3) is  appropriate, in this case, because

questions of law and fact common to class members predominate over any

questions affecting only individual members, and a class action is superior to other

available methods for fairly and efficient adjudicating the controversy.  However,

the facts of the case also meet the requirements for certification pursuant to Rule

23 (b) (2), because the defendants have acted or refused to act on grounds that

apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole.  Likewise, the facts

of the case also meet the requirements of Rule 23 (b) (1) (B) because  adjudications

with respect to individual class members, as a practical matter, would be

dispositive of the interests of the other members not parties to the individual

adjudications or would substantially impair or impede their ability to protect their

interests.

26)  Plaintiffs respectfully request that the action be certified as a Class

Action pursuant to Rule 23 (b) (3).   Rule 23(b)(3) invokes Rule 23 (e) (2) which

provides that the court "direct to class members the best notice that is practicable

under the circumstances, including individual notice to all members who can be

identified through reasonable effort," and specifies certain content for the notice to members of the class.  Certification pursuant to Rule 23(b)(3) will allow class members with special damages to opt out of the class if they feel they can better pursue a claim individually.

## PREREQUISITES OF RULE 23

27)  The facts of this case support a finding of the existence of all four prerequisites for a class action specified by Rule 23.  The four prerequisites set out in Rule 23 (a) (numerosity, commonalty, typicality, and adequate representations) are clearly met.

## NUMEROSITY

28)  The class members are numerous.  Several hundred employees who participated in the plan during the period of time used to define the class left the employment, either voluntarily or involuntarily, and lost their health insurance. The defendants did not provide adequate COBRA notice to those participants.  The defendants did not notify those participants who were involuntarily terminated of their right to a 65% discount on COBRA premium pursuant to ARRA.  As the plaintiffs can easily show, there were hundreds of participants who left employment at VictoryLand during the defined time period who were not provided with appropriate notices.

29)  The proposed class includes all of the plan participants who either voluntarily or involuntarily ceased to be employed at VictoryLand between the dates of   September 1, 2008 and May 31, 2010.  Those dates for the class definition were chosen to correspond with the beginning date and the ending date of the period during which employers such as VictoryLand were legally obligated to provide a 65% discount on COBRA premiums for plan participants who were involuntarily terminated from employment.

30)  The turnover rate at VictoryLand was heavy.  (See Exhibit 11, Affidavit of Myra Sides).  Every day, employees were hired and fired.  Victoryland employed over 2,000 people in January of 2010.  On  or about January 5th, about 225 employees at VictoryLand were involuntarily terminated.  (See Exhibit 23, Declaration Under Penalty of Perjury Pursuant to 28 U.S.C.A. § 1746 by John Michael Segrest).  Many of them participated in the group health plan, and lost their insurance coverage because of the job loss.  Then on February 4, 2010, VictoryLand discharged almost all of its employees and shut its doors.  About eighteen hundred employees were laid off at that time.

31)  The class includes all employees who participated in the plan and were terminated between the dates of September 1, 2008 and May 31, 2010.  Prior to May 1st of 2009, VictoryLand provided individual major medical healthcare coverage through United Healthcare to employees, at no cost to the employees,

who had completed their 90 day probationary period.  (See Exhibit 11, Affidavit of Myra Sides).   If the employee wanted family coverage from United Healthcare, the employee was required to pay for the family coverage portion by having the premiums deducted from their paycheck. After May 1st 2009 VictoryLand provided coverage through Blue Cross Blue Shield of Alabama, to employees who had completed the 90 day probationary period, at a cost of approximately $100.00 per month to the employee.  (See  Exhibit 4, Deposition of Rebecca Dean, Page 81).  The cost was deducted from their paycheck. As with the United Healthcare plan, if the employee wanted family coverage, the employee was required to pay for the family coverage portion by having the premiums deducted from their paycheck.

32)  Any employee, and their covered spouse, who was terminated between September 1, 2008 and May 31, 2010 should have received a COBRA notice within 45 days of the date of their termination. Any employee who was *involuntarily* terminated during this time period, and their covered spouse, should have received COBRA notice that informed the employees that they may be eligible for a 65% discount on their COBRA premium as required by ARRA.

33)  VictoryLand's Human Resource department did not have a procedure for sending out COBRA notices for employees who were randomly terminated, either voluntarily or involuntarily. In fact, the practice was to only send COBRA

14

notices to those employees who inquired about COBRA. (See Exhibit 11, Affidavit Myra Sides).  It is estimated that the Human Resources department at VictoryLand dealt with between 7 and 10 termination notices every day.  (See Exhibit 11, Affidavit Myra Sides).  Admittedly, not all of these employees were participants in the plan, but if there were only an average of 1 employee terminated a day who participated in the plan that would still be over 600 people, not including the masses that were terminated in January and February of 2010. It is possible that this class includes over 1000 former employees, but an exact determination is not possible without having had the benefit of discovery. [1]

34)  In 2008, in a case from the Middle District of Alabama, Judge Fuller wrote the following in regards to numerosity;

> "The Court must examine the facts of each case to assess whether a putative class is sufficiently numerous. *Gen. Tel. Co. of the Nw., Inc. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Generally, however, classes of more than forty members satisfy the numerosity requirement. *Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986); *Dujanovic v. MortgageAmerica, Inc.,* 185 F.R.D. 660, 666 (N.D.Ala.1999). When the exact number of class members cannot be ascertained, the court may make "common sense assumptions" to support a finding of numerosity. *Evans v. U.S. Pipe & Foundry,* 696 F.2d 925, 930 (11th Cir.1983)."

> *Susan J. v. Riley,* 254 F.R.D. 439 M.D.Ala.,2008.

---

[1] As pointed out in Paragraph 2, Plaintiffs have not had the benefit of depositions at this time.  Plaintiffs expect to acquire more detailed information as discovery progresses, and request the opportunity to supplement the evidentiary submissions in support of this motion, if necessary.

In the present case, "common sense assumptions" clearly indicate that more than 40 employees lost their jobs and group insurance at VictoryLand without receiving adequate COBRA notices.

35)  Obviously, joinder of all the parties is impracticable based on the sheer number of Plaintiffs.  Plaintiffs do not have to prove the exact size of the proposed class to meet the numerosity requirement, but only show that the number is exceedingly large, and joinder impracticable. "The primary focus of the numerosity requirement is whether joinder is impracticable" *Susan J,. Supra*.

**COMMONALITY**

36)  The issues of both law and fact underlying the claims asserted in this action are common to the entire membership of the class.  Over 2,000 employees were laid off in January and February, 2010 as a result of decisions by VictoryLand to avoid seizure of gambling equipment.  (See Exhibit 23, Declaration Under Penalty of Perjury Pursuant to 28 U.S.C.A. § 1746 by John Michael Segrest).  The decision of the defendants not to furnish adequate COBRA notices applied to the entire class.  The decision of the defendants not to inform class members of their right to a discount of 65% pursuant to ARRA affected all members of the class the same.  The class members all had the common experience of not receiving COBRA notices, and not receiving notice of entitlement to discounted premiums for COBRA.  Section 29 USCS 1132(a) and (c), and other

provisions of that statute govern the causes of action including entitlement to a civil penalty, in precisely the same way.  The claims of all the class members are based on the same essential set of facts.  The egregious conduct of the defendants justifies the award of a substantial penalty applies equally to all class members.

37)  Because  "the purpose of class actions is to conserve resources of both the court and the parties by permitting an issue affecting every [class member] to be litigated in an economical fashion…the threshold of 'commonality' is not high," and is "aimed in part at determining whether there is a need for combined treatment and a benefit to be derived therefrom".  *Jenkins v. Raymark Indus., Inc.,* 782 F.2d. 468, 472 (5th Cir. 1986).  Therefore, what the Court "looks for is a common issue the resolution of which will advance the litigation" *Sprague v. General Motors Corp.,* 133 F.3d. 388, 397 (6th Cir. 1988). That common issue is that every named Plaintiff and every proposed Class member is entitled to assert a claim in this court for a statutory penalty of up to $110 per day and "other relief" pursuant to 29 USCS § 1132.

38)  ERISA [29 USCS § 1132] specifically provides that "*(a) civil action may be brought"-- "by a participant or beneficiary" "for the relief provided for in subsection (c) of this section*…. Subsection (c) incorporates other statutory provisions, to provide in substance that  "*(a)ny administrator who fails to*" notify a participant or beneficiary of the right to continued COBRA coverage (if the

*participant is terminated, and the termination will result in loss of health insurance*

*coverage,)  * * *may in the court's discretion be personally liable to such*

*participant or beneficiary in the amount of up to $100 a day[2] from the date of such*

*failure or refusal, and the court may in its discretion order such other relief as it*

*deems proper.*   Each violation, "with respect to any single participant, shall be

treated as a separate violation."

39)  The statute creates a cause of action which may be maintained in this

Honorable Court as stated in the jurisdictional allegations of the Complaint. In

summary, the elements of the causes of action may be stated as follows: A

participant or a beneficiary in a group health plan to which the requirements of

ERISA and COBRA apply may recover of the sponsor or administrator of the plan

a statutory penalty of up to $110 per day and such other relief as the court deems

appropriate if (1) the participant or beneficiary in an employer-sponsored health

insurance plan loses his job and eligibility for health insurance coverage, and (2)

the plan administrator or sponsor fails to give notice to the participant or

beneficiary of his right to continued coverage under COBRA within 45 days after

termination of employment.

40)  The statutory penalty is the basis for the primary cause of action

asserted in the Amended Complaint.  It is the legal basis for the claims asserted on

---

[2] The $100 per day statutory penalty listed in the statute has been increased to $110 per day pursuant to 29 C.F.R. § 2575.502c-1. 7) "Pursuant to ERISA, all qualified beneficiaries are eligible for COBRA insurance coverage for a period of 18 months after the date of termination pursuant to 29 USCA § 1161 et seq.

behalf of the named Plaintiffs and all members of the proposed class.  All

questions of law will arise from this basic statutory material.  There can be no

question that in asserting this statutory cause of action, the plaintiffs and every

member of the proposed class are all raising identical questions of law.  Therefore,

there is commonality with respect to questions of law.

41)  Factually, there is tremendous commonality between and among the

claims of all the plaintiffs and class members.  The actions (or lack of required

action) that affected all the Class members was the same.[3]  The deliberate decision

of the Defendants not to follow the law affected all the plaintiffs the same.  The

same factual evidence will support the claims of each plaintiff and class member.

The commonality requirement "does not require that all of the questions of law or

fact raised by the case be common to all the plaintiffs" *Walco Inv., Inc. v. Thenen,*

168 F.R.D. 315, 325 (S.D.Fla. 1996).

42)  The mass layoffs that occurred in January and February 2010 provide

almost identical factual bases for the plaintiffs and Class Members laid off on those

occasions.  However, failure to give the COBRA notices required by those layoffs

does not differ in kind from the terminations that occurred at other times.  All were

a result of a deliberate decision of the defendants not to follow the requirements of

law as spelled out by ERISA, ARRA and COBRA.

---

[3] The fact that all plaintiffs were affected by the same deliberate decisions of the defendants would, in fact support a basis for class certification pursuant to Rule 23 (b) (2).

43)  The issues of both law and fact are common to the entire membership of the class.  The decision of the defendants not to furnish COBRA notices applied to the entire class.  The decision not to inform class members of their rights to a discount of 65% pursuant to ARRA affected the entire class the same.  The class members did not receive COBRA notices, and did not receive notice of entitlement to discounted premiums for COBRA.  The same Section 29 USCS 1132(a) and (c), and other provisions of that statute govern the causes of action in precisely the same way.  The egregious conduct of the defendants justifying a substantial penalty applies equally to all class members.

44)  While it is true that the award of damages may vary among class members based on the date of their termination, the *per diem* statutory penalty to be decided by the court should probably be the same for all class members.  The defendant's conduct towards the proposed class is uniform.  The only issue of any significance that may not be identical to all class members is the amount of damages sustained by each claimant and a difference in the damages does not preclude certification under Rule 23(b)(3) where , as here, common issues predominate . See *Bentley v. Honeywell Int'l, Inc.,* 223 F.R.D. 471,481 (S.D. Ohio 2004).  The 11th circuit has recognized that the presence of individualized damages does not prevent a finding that common issues predominate.  *Allapattah Servs., Inc. v. Exxon Corp.,* 333 F.3d. 1248, 1261 (11th Cir. 2003) Other Circuits have also

20

held that individual damage issues will not prevent certification where common issues predominate. See, e.g., *Olden v. Lafarge Corp.,* 383 F.3d. 495, 508-09(6th Cir. 2004). In the present case, differences in individual damages will be minimal. Most of the plaintiffs will be entitled to recover the same damages, based on the same evidence.  The only difference will be the calculations, based on the number of days, which is a mechanical calculation.

45)  If there is any reason to differentiate among Class members, that can best be decided in connection with the presentation of all facts in a single trial. The fact that individual issues remain "after the common questions of the defendants liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling v. Velsicol Chem. Corp.,* 855 F.2d. 1188, 1197(6th Circ.1988).   Rather, there must be some issue involved  that is common to the entire class and relief must "turn on questions of law applicable in the same manner to each member of the class." *Cailfano v. Yamaski,* 442 U.S. 682, 701 (1979).  Class certification is appropriate where common issues of fact or law are of sufficient importance to the class that the most efficient method of determining the rights of the parties is through the certification of a class action. O*'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311,330(c.D.Cal. 1988).  Courts in this circuit have often held that the commonality threshold is met win a defendant has

"engaged in a standardized course of conduct that affects all class members." *In re Terazoin Hydrochloride,* 220 F.R.D. 672, 686-87 (S.D.Fla.2004)

46)  The class members did not receive COBRA notices containing ARRA information  regardless of when their termination occurred.  All of the class members were entitled to receive COBRA notices including the information required by ARRA, if applicable, in accordance with Federal statutory regulations. That is the common thread of law and fact that exists among all of the class members. The only way to avoid varying adjudications among class members with common claims and assure uniformity is for this action to be certified as a class action.

**TYPICALITY**

47)  The named Plaintiffs are typical members of the proposed class.  Every claim is almost identical.  Each member did not receive the required notices.  Each is entitled to the statutory penalty.  Differences in the claims are negligible, and will not be difficult to easily manage in the course of the litigation.  Certification pursuant to Rule 23 (b) (3) will allow any member of the class who believes he or she has special damages that are not adequately included in the main thrust of this litigation (such as large medical bills for which there is no insurance coverage) to opt out and pursue an individual action if they desire to do so.  However,

22

practically all members of the class will be served best by pursuing the specific relief sought in this action.

48)  The typicality analysis asks "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985). By this standard, the instant case certainly meets the typicality requirement. The commonality and typicality requirements tend to merge.  "Both [commonality and typicality] serve as guidepost for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiffs' claim and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence*." General Tel. Co. of the Sw. v. Falcon*  457 U.S. 147, 157 n.13 (1982).  The Supreme Court stated that "The typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiffs' claims." *General Telephone Co. of the Northwest v. Equal Employment Opportunity Commission*, 446 U.S. 318, 330, 100 S.Ct. 1698 (1980).  In the case at bar, the typicality requirement will not "limit" the claims of any proposed class members.  The claims of all the class members are almost identical to those of the named plaintiffs. The amount of damages, in some

instances, is the only thing that will differ among class members.  Even in those

instances, the method of computing damages is likely to be the same for all class

members.

49)  All the proposed class members have the same or similar claims. They

did not receive adequate COBRA notices. This conduct was in no way unique to

the named plaintiffs.  All the other class members were injured by the same

conduct. Typicality refers to the nature of the claim or defense of the class

representatives and not to the specific facts from which it arose or to the relief

sought. Any factual differences will not render a claim atypical because the claims

arise from the same event or practice or course of conduct (*i.e.* failure to give

COBRA notice)  that gives rise to the claims of the class members, and it is based

on the same legal theory. ( See *Newburg*, *Supra*, at 335).

50)  As long as there is a nexus between the Plaintiff's claims and the

common questions of fact that unite the class, the typicality requirement is

satisfied.  *Cook v. Rockwell Int I Corp*., 151 F.R.D. 378, 385, (D.Colo. 1993). In

this case, the fact that the claims of the named plaintiffs arise from the same

conduct, are based on the same legal theories and  the "close nexus between the

claims of the proposed  representatives and the claims of the class assures that

plaintiffs will advance the interest of all class members…" *In re MTBE,* 241 F.R.D.

at 198. This action clearly exceeds the requirements of typicality according to Rule 23(a)(3).

## ADEQUATE REPRESENTATION

51)  The named plaintiffs, who are all typical class members, possess the same interest and have suffered the same damages as members of the class making them ideal representatives of the class.  "A class representative must be a part of and possess the same interest and suffer the same injury as the class members;" *Amched Prods., Inc. v. Windsor* U.S. 521 U.S. 591,624 (1997).  The adequacy of representation factor involves a twofold showing: "(1) whether any substantial conflicts of interest exist between the representatives and the class; (2) whether the representatives will adequately prosecute the action ." *Valley Drug Co. v. Geneva Pharms., Inc.,*  350F3d. 1181,1189 (11th Cir. 2003) The plaintiffs can and will fairly and adequately protect the interests of the class and have no interest that conflicts with or is antagonistic to the interest of the class.  To the extent that there are minor variations, such as the date of discharge, inclusion in *en masse* layoffs, layoffs at different times, the various named plaintiffs, as a group, represent the viewpoint of every member of the class.  The named Plaintiffs have no interest that conflicts with other members of the proposed class, and in fact, the interests of all members are consistent with and supported by that of the other members.

52)  The attorneys who have appeared for the plaintiffs are prepared to adequately represent them.  Counsel will provide  supplemental information including but not lmited to declarations to support counsel's adequacy of representation.

### RULE 23 (B) (3) REQUIREMENTS

53)  To certify the Class pursuant to Rule 23 (b) the Court must find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Those conditions are clearly met here.  As indicated above, the questions of law **and** fact that pertain to the claims of each of the plaintiffs and each member of the proposed class are almost identical.  The same facts pertaining to the defendants' decision not to provide the notices including the information pertaining to the 65% ARRA discount must be presented in support of every claim.  Often the same witnesses will be required to provide that information.  To require the repeated presentation of that same evidence in numerous cases would be a tremendously ineffective, inefficient method of resolving these potential individual actions.  It would not be good use of judicial resources.  It would wear out the witnesses and give tactical advantage to the defendants, who could potentially string out the disposition of the

cases for a long time, thereby avoiding the ready access to this Honorable Court that was stated as a policy of ERISA for this action.

The questions of law and fact common to class members clearly predominate over any questions affecting only individual members, and a class action is superior to any other available method for fairly and efficiently adjudicating the controversy.

54) " Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and they predominate over the individual questions." *Klay v. Humana Inc.,* 382 F. 3d 1241, 1254 (11th Cir. 2004)

55) The key issue in this case is the liability of the defendant for the penalty of up to $110.00 per day.  The court's inquiry with regard to superiority is typically focused on "whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Brown v. SCI Funeral Servs.* of *Fla.,* 212 F.R.D. 602, 606 (S.D.Fla.2003).  An award of a substantial, uniform civil fine to each of the Plaintiffs and class members will go far toward relieving the hurt caused by the actions of the defendants.

56) "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v.Carter Wallace, Inc.,* 97 F. 3d. 1227, 1234(9th Cir. 1996) See also, *Sacred heart*

*v. Humana  Military* 08-16430(11th Cir.3-30-2010). "Whether an issue

predominates can only be determined after considering what value the resolution of

a class-wide action will have on each class members' underlying cause of action."

*Rustein v. Avis Rent-A-Car Sys., Inc.,* 211 F.3d. 1228, 1234 (11th Cir. 2000).  The

questions of law and fact common to class members clearly predominate over any

questions affecting only individual members, and a class action is superior to any

other available method for fairly and efficiently adjudicating the controversy.

57)  In the instant case, a class action lawsuit is the superior method because

it allows the Court to aggregate a large number of individualized claims into one

representational lawsuit. This aggregation will increase the efficiency of the legal

process, and lower the costs of litigation. 28 U.S.C. § 1332(d)(2).  In cases with

common questions of law and fact, aggregation of claims into a class action may

avoid the necessity of repeating "days of the same witnesses, exhibits and issues

from trial to trial." *Jenkins v. Raymark Indus. Inc.*, 782 F.2d 468, 473 (5th Cir.

1986) (granting certification of a class action involving asbestos).

58)  In "limited fund" cases, a class action ensures that all plaintiffs receive

relief and that early-filing plaintiffs do not raid the fund (*i.e.*, the defendants) of all

its assets before other plaintiffs  may be compensated. *See Ortiz v. Fibreboard

Corp.*, 527 U.S. 815 (1999). Until discovery is completed it is impossible to

calculate the potential damages and to know if there are insurance policies that

may cover the defendant's actions. The economic stability of the defendants is

unknown, but based on recent events, the defendants future economic operations

are uncertain to say the least. A class action in this situation centralizes all claims

into one venue where this court can equitably divide the assets amongst all the

plaintiffs in the case.

## **CONCLUSION**

59)  For the foregoing reasons, Plaintiffs respectfully request that this court

certify the proposed Class as defined herein, appoint the plaintiffs designated

herein as class representatives, and appoint Philip Dale Segrest, David L. Selby,

David M. Martin and Robert S. Thompson and their firms and members thereof as

class counsel as set forth herein.

Respectfully submitted this 29th day of  August, 2011.

/s/    *Dale Segrest*
Philip Dale Segrest (ASB-6870-E61P)
The Segrest Law Firm
P.O. Box 780791
Tallassee, AL  36078
Telephone:  334-252-0036
Email:  Dale.Segrest@SegrestLaw.com

*/s/ David L. Selby, II*
David L. Selby, II (ASB-6994-Y62D)
Law Offices of David L. Selby, II, LLC
One Chase Corporate Center
Suite 400
Birmingham, AL  35244
Telephone:  205-313-6491
dls@davidselbylaw.com

*/s/ David P. Martin*
David P. Martin (ASB-3500-M68D)
The Martin Law Group, LLC
2117 Jack Warner Parkway
Suite 1, Building B
Tuscaloosa, AL  35401
Telephone:  205-343-1771
david@erisacase.com


*/s/ Robert S. Thompson*
Robert S. Thompson (THO039)
Robert Simms Thompson, P.C.
308 North Elm Street
Tuskegee, AL  36083
Telephone:  334-727-6463
Fax:  334-727-5746
Email:  rstpc@aol.com

*Attorneys for Plaintiffs and the Class*


<u>Certificate of Service</u>

I hereby certify that a true and correct copy of the foregoing document has been filed using the CM/ECF system of the United States District Court, and the system will send notification of such filing to the following on this 29th day of August, 2011:

Patrick L. W. Sefton, Esq.
Robert E. Sasser, Esq.
R. Brian Tipton, Esq.
Sasser, Sefton, Tipton & Davis, P.C.
P.O. Box 242127
Montgomery, AL  36124-2127

Fred D. Gray, Esq.
Stanley Gray, Esq.

Gray, Langford, Sapp, McGowan, Gray & Nathanson
P.O. Box 830239
Tuskegee, AL  36083


                                    */s/ Dale Segrest*
                                    Dale Segrest