IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

```
LUCRETIA HORNSBY, et al.,    )
etc.,                        )
                             )
     Plaintiffs,             )
                             )       CIVIL ACTION NO.
v.                           )       3:10cv680-MHT
                             )          (WO)
MACON COUNTY GREYHOUND        )
PARK, INC., et al.,          )
                             )
     Defendants.             )
```

## OPINION AND ORDER

Plaintiffs Nancy Yarenko and Murray Baker and other named plaintiffs bring this putative class-action suit charging the defendants with violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, and other related federal statutes.  This case is now before the court on the defendants' motions for arbitration and dismissal of Yarenko and Baker's claims pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16.  The motions will be granted to the extent that arbitration will be compelled.

## I.   BACKGROUND

Yarenko and Baker are former employees of the Macon County Greyhound Park (MCGP), one of the defendants in this lawsuit.   They were provided a group health insurance plan.   They assert that, under federal law, employees who participated in a qualified healthcare plan and were involuntarily terminated between certain dates were entitled to continued health coverage at a 65 % discount.   Yarenko and Baker claim that, in violation of ERISA and other federal statutes, the defendants failed to provide them with notice of this 65 % discount and failed to remit or refund the excess premiums for insurance withheld from paychecks near the end of their employment relationship.

The defendants now move to compel arbitration of, and dismiss, Yarenko and Baker's claims pursuant to an arbitration clause contained in a "Statement of Applicant" they each signed when they applied for

2

employment with MCGP.  In pertinent part, the statement provides:

> "I agree that any controversy which may cause [sic] arise out of my employment with MCGP will be resolved by arbitration in Birmingham, Alabama, in accordance with the procedures of the American Arbitration Association.  I understand that my rights and responsibilities under arbitration as well as those of MCGP are more fully set out in the employee handbook."

Ex. B (Doc. No. 28-2) at 2.

## II. DISCUSSION

### A.

In general, the FAA governs the validity of arbitration agreements.  Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005).  Section 2, the "primary substantive provision of the Act," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), provides: "A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such

contract or transaction, ... or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  This provision reflects "both a 'liberal federal policy favoring arbitration'... and the 'fundamental principle that arbitration is a matter of contract.' ... [C]ourts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms."  AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011) (quoting, respectively, Moses H. Cone, 460 U.S. at 24, and Rent-A-Center, West, Inc. v. Jackson, 130 S. Ct. 2772, 2776 (2010) (further citation omitted)).  As such, "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the

4

arbitration clause is not susceptible of an interpretation that covers the asserted dispute." <u>AT&T Techs., Inc. v. Communications Workers of Am.</u>, 475 U.S. 643, 651 (1986) (internal quotes and citation omitted); <u>see also Seaboard Coast Line R.R. Co. v. Trailer Train Co.</u>, 690 F.2d 1343, 1348 (11th Cir. 1982) ("[F]ederal policy requires that we construe arbitration clauses generously, resolving all doubts in favor of arbitration.").

Nonetheless, because, under the FAA, contract law is left primarily to the States, the antecedent question of whether an enforceable contract or agreement to arbitrate exists, along with the interpretation of that contract or agreement, is generally a matter of state law. <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.</u>, 130 S. Ct. 1758, 1773 (2010); <u>In re Checking Account Overdraft Litig. MDL No. 2036</u>, 674 F.3d 1252, 1255 (11th Cir. 2012).

To effect § 2's substantive provision, § 4 of the FAA establishes a procedural mechanism for compelling arbitration when one party has been subjected to a lawsuit it believes is within the ambit of an arbitration agreement: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition [the court] ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  Section 4 goes on to provide that, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  <u>Id</u>.[1]

---

1.  To be within the reach of the FAA, an arbitration agreement must, as stated, "evidenc[e] a transaction involving commerce." 9 U.S.C. § 2; <u>Caley</u>, 428 F.3d at 1367.  The parties do not contest this issue here.

B.

The dispute here is, primarily, about whether an enforceable arbitration agreement exists between the parties and, secondarily, about whether the terms of any such agreement, should it exist, control the statutory claims advanced by Yarenko and Baker.[2]  The defendants' argument is straightforward: the Statement of Applicant includes a valid, written agreement to arbitrate that clearly encompasses Yarenko and Baker's claims. Therefore, the defendants continue, the court is required to compel arbitration under the FAA and should dismiss Yarenko and Baker and their claims from this lawsuit.

---

2.  The parties do not contest that the issue of who determines arbitrability is properly one for judicial determination, not for an arbitrator.  "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."  AT&T Technologies, 475 U.S. at 649.

7

## 1.

Because arbitration is a creature of contract, the court must apply ordinary state-law contract principles governing the formation of contracts when deciding whether the parties have an arbitration agreement. The defendants, as the parties seeking to compel arbitration, bear the burden of proving the existence of a contract calling for arbitration.

The parties agree that Alabama law applies here. In Alabama, the "elements of a valid contract include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." Shaffer v. Regions Fin. Corp., 29 So.3d 872, 880 (Ala. 2009) (internal quotes and citations omitted).

Here, the document at issue is the Statement of Applicant Yarenko and Baker signed when they initially sought employment at MCGP. Yarenko and Baker first argue that this statement does not constitute an agreement to arbitrate because its language includes the following

8

provision that, according to them, is "nonsense," Pl.

Br. (Doc. No. 34) at 15: "I agree that any controversy

which <u>may cause arise out</u> of my employment with MCGP will

be resolved by arbitration...." Ex. B (Doc. No. 28-2) at

2 (emphasis added). While it "is not seriously disputed

that the Statement of Applicant is not well drafted," the

error is "[s]o obvious that it does not in any way

obscure the obvious meaning of the sentence or the nature

of the agreement between the parties." <u>Sides v. Macon</u>

<u>County Greyhound Park, Inc.</u>, 2011 WL 2728926, at *4 (M.D.

Ala. July 12, 2011) (Fuller, J.) (addressing the same

provision). In other words, the typographical error is

so obvious and not self-contradictory that the meaning of

the provision remains clear: The provision provides for

arbitration.

Yarenko and Baker next argue that the Statement of

Applicant did not create an agreement to arbitrate

because it was not signed by anyone on MCGP's behalf.

They contend that the statement "does not evidence any

intent by the defendants to accept or be bound by the statement." Pl. Br. (Doc. No. 34) at 16.  This argument misses the mark, however, because it misapprehends how an expression of assent operates.  In consideration for signing the statement, MCGP agreed to hire Yarenko and Baker according to the terms of the statement, which hiring was enough to demonstrate MCGP's assent to the statement's terms.  Cf. Sides, 2011 WL 2728926, at *4 (noting that MCGP's "decision to hire [the plaintiffs] after they signed the Statements of Applicant is sufficient evidence of its assent and agreement to be bound to the contractual offer it had extended) (citing Gadsen Budweiser Distrib. Co., Inc. v. Holland, 807 So.2d 528, 531 (Ala. 2001)).

To elaborate, basic principles of Alabama contract law, along with other terms in the Statement of Applicant, demonstrate why the employment of Yarenko and Baker was sufficient to indicate mutual assent.  "Alabama follows the general rule" that a "unilateral contract is

created when one party makes an offer and the other party accepts by performing an act. ... In a unilateral contract, '[o]nly one party makes an offer (or promise) which invites performance by another, and performance constitutes both acceptance of that offer and consideration.'" <u>Conference Am., Inc. v. Conexant Sys., Inc.</u>, 508 F. Supp. 2d 1005, 1014) (M.D. Ala. 2007) (Watkins, J.) (quoting <u>SouthTrust Bank v. Williams</u>, 775 So.2d 184, 188 (Ala. 2000) (internal quotes and citation omitted)). Accordingly, "'[i]n such a case the performance supplies the element of mutuality necessary as a consideration to support the obligation.'" <u>Id</u>. (quoting <u>Miller v. Thomason</u>, 156 So. 773, 774 (1934) (citations omitted)). Here, when MCGP hired Yarenko and Baker, it assented to the statement and accepted its terms.

As a result, MCGP as well as Yarenko and Baker accepted all the Statement of Applicant's terms: MCGP had a right, under the statement to "investigate all

references and to secure additional information about"
each applicant; and MCGP also made clear that it
"conducts drug screening on all applicants and that
failure to pass such a test will result in [an]
application being rejected, or, if employed, ...
employment being terminated.  Statement of Applicant
(Doc. No. 28-2) at 2.  The statement also gave MCGP a
limited amount of time to effect its acceptance of these
terms through performance by providing that: "This
application is current for only sixty days.  At the
conclusion of this time, if [the applicant] ha[s] not
heard from MCGP and still wish[es] to be considered for
employment, it will be necessary for [the applicant] to
fill out a new application."  Id.

With these terms, therefore, the Statement of
Applicant invites performance by MCGP to hire the
applicant according to certain terms: It can conduct drug
tests, investigate her background, and, as set forth in
the statement, force any controversy arising out of

employment to be resolved by arbitration.  In such a case, performance supplies the element of mutuality necessary as consideration to find that a valid, enforceable agreement has been made.  Cf. Lanier Worldwide, Inc. v. Clouse, 875 So.2d 292, 296 (Ala. 2003) ("Conduct of one party to a contract from which the other may reasonably draw an inference of assent to an agreement is effective as acceptance.") (internal quotes and citation omitted).

In their final argument based upon the text of the Statement of Applicant, Yarenko and Baker assert that, because the statement's broad arbitration language does not explicitly mention ERISA claims or any statutory claims, the statement does not constitute an agreement to arbitrate the claims they have asserted under ERISA. Addressing an arbitration clause with terms as broad as the "any controversy" language in the Statement of Applicant here, the Eleventh Circuit Court of Appeals has explained that an agreement to arbitrate "any action,

13

dispute, claim, counterclaim or controversy" between the parties includes the arbitration of statutory claims because "[a]ny disputes means all disputes, because 'any' means all.'" Anders v. Hometown Mortg. Servs., Inc., 346 F.3d 1024, 1028 (11th Cir. 2003) (quoting Merritt v. Dillard Paper Co., 120 F.3d 1181, 1187 (11th Cir. 1997)).

To make their case, Yarenko and Baker point to Paladino v. Avnet Computer Technologies, Inc., 134 F.3d 1054 (11th Cir. 1998), a discrimination case brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a, 2000e through 2000e-17, where the appellate court invalidated an arbitration clause because the agreement provided for arbitration of all disputes, but limited the arbitrator to providing damages for breach of contract only, and not for any other damages, such as those for violations of anti-discrimination law or other tortious liability. See Paladino, 134 F.3d at 1060-62. As the Eleventh Circuit later explained in Anders, the arbitration clause in

14

_Paladino_ "was invalid ... because 'the arbitrability of [statutory] claims rests on the assumption that the arbitration clause permits relief equivalent to court remedies'"; and, because the _Paladino_ clause excluded equivalent remedies, the court "pronounced it invalid." 346 F.3d at 1030 (quoting _Paladino_, 134 F.3d at 1062).

Yarenko and Baker's attempt to sweep this case under the rule of _Paladino_ is unavailing.  The argument comes in two steps: First, they point out that the arbitration clause requires that arbitration be conducted "in accordance with the procedures of the American Arbitration Association," Statement of Applicant (Doc. No. 28-2) at 2, procedures which they deem "fair" and do not at all limit their statutory remedies.  Pls. Br. (Doc. No. 34) at 21.  Second, they point to the next sentence in the provision: "I understand that my rights and responsibilities under arbitration as well as those of MCGP are more fully set out in the employee handbook." Statement of Applicant (Doc. No. 28-20) at 2.   The

15

problem, Yarenko and Baker contend, is that the grievance procedures set out in the employee handbook are not the same as, or consistent with, those of the American Arbitration Association.  Examination of these grievance procedures reveals what appear to be internal, less formal channels of dispute resolution that would operate before or outside of more formal processes like litigation or even arbitration itself.  In fact, these internal grievance procedures do not appear in any way to limit remedies available externally.  For instance, and consistent with Paladino, the grievance procedures make clear that employees who file charges of discrimination with the Equal Employment Opportunity Commission are not within the scope of the internal system.  Yet, even if the reference to the employee handbook could be considered as having a bearing upon how arbitration is to proceed, Yarenko and Baker's argument still misses the mark because, in contrast with Paladino, nothing in MCGP's employee handbook's description of the grievance

16

procedures purports to limit or burden an employee's right to get any form of statutory remedy.


2.

Yarenko and Baker submit a number of policy arguments asserting that their ERISA claims cannot be arbitrated as a matter of federal policy because ERISA was passed in order to provide employee beneficiaries with "appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001 (emphasis added). To effect this policy of federal-court access, Yarenko and Baker emphasize, ERISA grants exclusive jurisdiction to federal courts, thus denying the concurrent jurisdiction that typically applies in state court for the assertion of federal claims. 29 U.S.C. § 1132(e). While the court agrees that there is a clear federal policy expressed in ERISA to provide plaintiffs with an exclusively federal forum for judicial resolution of ERISA-related disputes, the court cannot conclude that, as a matter of policy,

17

Congress intended to supercede the FAA, or prohibit non-judicial determination of ERISA claims, when it enacted ERISA.

Once a valid, enforceable agreement that covers disputes brought pursuant to a federal statute has been found, "the statutory claims are subject to arbitration 'unless Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" Picard v. Credit Solutions, Inc., 564 F.3d 1249, 1254 (11th Cir. 2009) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991)). "'Statutorily-created causes of action are no exception to the rule that arbitration agreements should be enforced according to their terms.'" Id. (quoting Cunningham v. Fleetwood Homes, 253 F.3d 611, 617 (11th Cir. 2001)). When assessing such a claim, the Supreme Court has explained that a court must review statutory text, legislative history, and the purpose of the statute in determining whether to preclude arbitration because,

18

"[l]ike any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command.  The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from [the statute's] text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes." Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226-27 (1987) (alteration in original) (internal quotations and citations omitted)).

Fortunately, in addressing whether ERISA claims may be subject to arbitration, this court does not write on a blank slate. Before Shearson/American Express, Inc. v. McMahon and Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477 (1989), there was some disagreement among courts about whether ERISA claims were

arbitrable.   See Secure Health Plans of Ga., LLC, v. DCA

of Hawkinsville, LLC, 2010 WL 4823435, at *3 (M.D. Ga.

Nov. 22, 2010) (Treadwell, J.) (collecting cases).   After

McMahon and Quijas, however, courts have analyzed the

purpose of both ERISA and the FAA and have "uniformly

held that ERISA claims are arbitrable."   Id.; see, e.g.,

Comer v. Micor, Inc., 436 F.3d 1098, 1100 (9th Cir. 2006)

(explaining that the Ninth Circuit Court of Appeals had

"expressed skepticism about the arbitrability of ERISA

claims, ... but those doubts seem to have been put to

rest by the Supreme Court's opinions" in McMahon and

Quijas); Williams v. Imhoff, 203 F.3d 758, 767 (10th Cir.

2000) (holding "that Congress did not intend to prohibit

arbitration of ERISA claims"); Kramer v. Smith Barney, 80

F.3d 1080, 1084 (5th Cir. 1996) (surveying prior courts

and "agree[ing] that Congress did not intend to exempt

statutory ERISA claims from the dictates of the

Arbitration Act"); Pritzker v. Merrill Lynch, Pierce,

Fenner & Smith, Inc., 7 F.3d 1110, 1119 (3d Cir. 1993)

(overturning circuit precedent and holding that "McMahon's analysis makes it clear that agreements to arbitrate statutory ERISA claims under the FAA may be enforceable"); Bird v. Shearson Lehman/American Express, Inc., 926 F.2d 116, 122 (2d Cir. 1991) ("Arbitration is not inconsistent with the underlying purposes of ERISA. Appellees have not sustained their burden of demonstrating that the text, legislative history, or underlying purposes of ERISA indicate that Congress intended to preclude a waiver of a judicial forum for claims arising under it. Accordingly, we hold that statutory claims arising under ERISA may be the subject of compulsory arbitration."); Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc., 847 F.2d 475, 478-79 (8th Cir. 1988) (similar).

The court finds these decisions persuasive, and there is no need to repeat the now well-established reasons for holding that ERISA claims may be subject to arbitration. Thus, having carefully examined this body of law and the

rationale of each decision, and while neither the Supreme Court nor Eleventh Circuit has explicitly ruled upon the issue of whether ERISA claims are subject to arbitration, this court holds that Congress did not intend to prohibit arbitration for ERISA claims.

Finally, Yarenko and Baker argue that requiring them and other putative plaintiff-class members to arbitrate their ERISA claims would be unconscionable because, among other things, it would deprive them of the ability to proceed as a class action. The final phrase of § 2 of the FAA "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract,'" and this "saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." <u>Concepcion</u>, 131 S. Ct. at 1746

(quoting 9 U.S.C. § 2, and <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S. 681, 687 (1996)); <u>see, e.g.</u>, <u>Palmer v. Infosys Techs. Ltd., Inc.</u>, ___ F. Supp. 2d ___, 2011 WL 5434258, at *3-4 (Nov. 9, 2011) (Thompson, J.) (applying state unconscionability law).

That said, <u>Concepcion</u> recently shed new light on the application of § 2's savings clause.  In extending the rule of <u>Doctor's Associates</u>, which held that state-law doctrines that single-out arbitration are preempted by § 2, 517 U.S. at 687, <u>Concepcion</u> held that California's rule "classifying most collection-arbitration waivers in consumer contracts unconscionable" is preempted.  131 S. Ct. at 1746.  The Supreme Court affirmed the principle that, "Although § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." <u>Id</u>. at 1748.  In reaching this conclusion, the Court explained that, "When state law prohibits outright the

arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.  But the inquiry becomes more complex when a doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration."  <u>Id</u>. at 1747 (citation omitted).  Application of § 2's savings clause, under <u>Concepcion</u>, is now purposive: a court inquires whether a particular application of a State's unconscionability law interferes with the purposes of arbitration.  <u>Id</u>. at 1750.  Thus, in <u>Concepcion</u> itself, California's rule was preempted by the FAA "[b]ecause it st[ood] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  <u>Id</u>. at 1753 (internal quotes and citation omitted).

With these principles in mind, this court must determine whether (1) Alabama's unconscionability doctrine as applied in <u>Leonard v. Terminix International</u>

Co., L.P., 854 So.2d 529 (Ala. 2002), governs this case,

and (2) if so whether, under Concepcion, this rule

impermissibly conflicts with the purposes of the FAA.

In Alabama, courts generally consider two factors for

determining whether a contract is unconscionable: "'(1)

terms that are grossly favorable to a party that has (2)

overwhelming bargaining power.'" Briarcliff Nursing

Home, Inc. v. Turcotte, 894 So.2d 661, 665 (Ala. 2004)

(quoting American General Finance, Inc. v. Branch, 793

So.2d 738, 748 (Ala. 2000)). Applying these standards,

the Alabama Supreme Court held in Leonard that the

following arbitration agreement unconscionable and

therefore unenforceable:

> "The Purchaser and Terminix agree that
> any controversy or claim between them
> arising out of or relating to this
> agreement shall be settled exclusively
> by arbitration.  Such arbitration shall
> be conducted in accordance with the
> Commercial Arbitration rules then in
> force of the American Arbitration
> Association.  The decision of the
> arbitrator shall be a final and binding
> resolution of the disagreement which may
> be entered as a judgment by any court of

competent jurisdiction.  Neither party
shall sue the other where the basis of
the suit is this agreement other than
for  enforcement  of  the  arbitrator's
decision.   In  no  event  shall  either
party  be  liable  to  the  other  for
indirect,  special  or  consequential
damages or loss of anticipated profits."

854 So.2d at 532-33.

Leonard found this clause unconscionable because it

precluded a class action, which the plaintiffs urged was

the only way they could obtain relief given the small

size of their claims and the costs imposed by the

arbitration under the American Arbitration Association's

Commercial Arbitration Rules.  Id. at 535.  That is, the

plaintiffs contended that, because the value of the

plaintiffs' claim ($ 500) was less than the price of

arbitration itself ($ 1150), the agreement was

unconscionable.  The only way to have an effective

remedy, the plaintiffs further argued, was to proceed on

a classwide basis.  In granting this "economic-

unfeasibility" argument, id., the Alabama Supreme Court

emphasized that its finding of unconscionability was not

26

an "attack on arbitration clauses alone," but would have
been the same if the contract prohibited an assertion of
claims on a class-wide basis in a judicial forum.  <u>Id</u>.;
<u>see also</u> <u>id</u>. at 539 ("The invocation of Alabama law
relating to unconscionability to declare an arbitration
agreement unconscionable and thereby avoid relegation to
arbitration of small claims not reasonably susceptible to
meaningful redress in that forum does not impermissibly
discriminate against arbitration contrary to <u>Doctor's
Associates</u> ....  This is so because a conclusion of
unconscionability could apply with equal force to an
effort to enforce a contract provision silent as to
arbitration yet prohibiting participation in a class
action under similar circumstances.").

From there, after emphasizing that the arbitration
clause provided that neither party could be "liable to
the other for indirect, special or consequential damages
or loss of anticipated profits recoverable damages,"
<u>Leonard</u> concluded that the clause deprived the plaintiffs

of "a meaningful remedy," exhibited "unreasonably favorable and patently unfair terms in its contract of adhesion," and was therefore unconscionable.  <u>Id</u>. at 538. <u>Leonard</u> explained: "This arbitration agreement is unconscionable because it is a contract of adhesion that restricts the [plaintiffs] to a forum where the expense of pursuing their claim far exceeds the amount in controversy.  The arbitration agreement achieves this result by foreclosing the [plaintiffs] from an attempt to seek practical redress through a class action and restricting them to a disproportionately expensive individual arbitration."  <u>Id</u>. at 539.

Yarenko and Baker argue that the arbitration clause in the Statement of Applicant here is unconscionable under <u>Leonard</u> and that, because the Alabama Supreme Court expressly applied the rule of <u>Doctor's Associates</u> (and made a rule of general applicability, not one focused on arbitration), <u>Leonard</u> is not preempted by the FAA under <u>Concepcion</u>.  The court cannot agree.  This case is

28

distinguishable from Leonard, and the court finds that the arbitration clause is not "grossly favorable" to either party or otherwise unconscionable.

First, the arbitration clause here does not limit damages in any way, which was a substantial motivator for the Leonard holding. In subsequent cases--in the Alabama Supreme Court, this court, and other courts--courts have uniformly rejected Leonard-based unconscionability challenges where there was no restriction on damages or other sorts of remedy. See, e.g., Lawrence v. Household Bank (SB), N.A., 343 F. Supp. 2d 1101, 1112 (M.D. Ala. 2004) (Thompson, J.) ("Unlike in Leonard, there is no claim here that plaintiffs' arbitration agreements limit the damages they can recover and no argument that their arbitration agreements limit their ability to recover their costs and fees. Accordingly, this argument does not provide plaintiffs with relief."); Taylor v. First North Am. Nat'l Bank, 325 F. Supp. 2d 1304, 1321 (M.D. Ala. 2004) (Thompson, J.) (describing a case as "very

similar" to Leonard in "some ways," but nonetheless
distinguishing the case on the ground that there was no
limitation on the plaintiff's right to recover damages);
Taylor v. Citibank USA, N.A., 292 F. Supp. 2d 1333, 1345
(M.D. Ala. 2003) (Albritton, C.J.) (distinguishing
Leonard from a case where the "arbitration clause d[id]
not limit any of the substantive remedies available to
the Plaintiff under" a federal statute); Gipson v. Cross
Country Bank, 294 F. Supp. 2d 1251, 1263-64 (M.D. Ala.
2003) (Albritton, C.J.) (same); Service Corp. Int'l v.
Fulmer, 883 So.2d 621, 632 (Ala. 2003) ("While the
arbitration provision in Leonard was part of a contract
of adhesion, it also included a 'limitation upon recovery
of indirect, special, and consequential damages or loss
of anticipated profits, and prohibited treatment of the
plaintiff's claims as a class action'" (quoting Leonard,
854 So.2d at 538 (internal quotes omitted)).  Indeed,
this court's conclusion that the absence of a limitation
of damages distinguishes this case from Leonard is

30

consistent with the court's conclusion above that the arbitration clause in the Statement of Applicant is not invalid under Paladino; for both determinations, there has not been an impermissible restriction on the plaintiffs' right to a remedy just because they are compelled to arbitrate.

Second, and relatedly, Yarenko and Baker do not contend that their potential recovery in arbitration will be necessarily smaller than the amount they will be required to spend just to arbitrate the case (that is, there is no "economic-unfeasibility"), a circumstance that puts this case well outside of Leonard's core concern. See also Pitchford v. AmSouth Bank, 285 F. Supp. 2d 1286, 1296 (M.D. Ala. 2003) (Albritton, C.J.) (noting that Leonard "addressed a situation where the plaintiffs could not vindicate their rights because the costs of arbitration would exceed the potential recovery" but found the arbitration provision conscionable because the plaintiffs' potential "recovery w[ould] not

necessarily be smaller than the costs to the Plaintiffs of pursuing th[e] matter through arbitration"); Matthews v. AT&T Operations, Inc., 764 F. Supp. 2d 1272, 1281 (N.D. Ala. 2011) (Propst, J.) (rejecting a Leonard unconscionability claim in part because the "arbitration costs would not be prohibitively expensive"); Powell v. AT&T Mobility, LLC, 742 F. Supp. 2d 1285, 1292 (N.D. Ala. 2010) (Coogler, J.) (similar).

Third, and at the end of the day, Yarenko and Baker's complaint is really a policy argument: it would be more efficient for them to litigate this case as a class action than to proceed as individuals. They urge that the only "practical way to assure the enforcement" of ERISA's policy requiring certain coverage notice be sent is through class-action litigation. Pl. Br. (Doc. No. 34) at 28. Yet, just because, on Yarenko and Baker's theory, it would be more efficient to proceed as a class, does not mean that it is unconscionable under Alabama law to preclude them, and any other potential plaintiffs who

signed the Statement of Applicant, from proceeding with arbitration.

Notably, the arbitration clause here says nothing about classwide arbitration.  This silence means that the Alabama default rule, that "classwide arbitration is permitted only when the arbitration agreement provides for it," kicks in.  Taylor, 325 F. Supp. 2d at 1320 n.28. This default rule does not mean that Yarenko and Baker should prevail on their challenge to arbitration.  In an analytically similar situation, the Eleventh Circuit has held that arbitration clauses are enforceable even when their application may effectively prevent plaintiffs from pursuing their claims as a class action.  See, e.g., Caley, 428 F.3d at 1378 (rejecting the argument that arbitration of a number of claims, including an ERISA claim, was unconscionable under Georgia law because it, among other things, "precluded class actions" (citing Gilmer, 500 U.S. at 31); Randolph v. Green Tree Financial Corp.--Alabama, 244 F.3d 814, 816-19 (11th Cir. 2001)

(similar for claims under the Truth in Lending Act, 15 U.S.C. § 1601, et seq.).  As the appellate court has explained, "there exists a difference between the availability of the class action tool, and possessing a blanket right to that tool under any circumstance." Randolph, 244 F.3d at 817 (internal quotes and citation omitted).[3]

Because the arbitration clause in the Statement of Applicant is not unconscionable, the court need not, and does not, reach the issue of whether a finding of unconscionability on the basis of Leonard would be preempted by the FAA under Concepcion.

---

3.   See also Caudle v. Am. Arbitration Ass'n, 230 F.3d 920, 921 (7th Cir. 2000) ("A procedural device aggregating multiple persons' claims in litigation does not entitle anyone to be in litigation; a contract promising to arbitrate the dispute removes the person from those eligible to represent a class of litigants."); cf. Johnson v. West Suburban Bank, 225 F.3d 366, 378 (3d Cir. 2000) (holding that Congress did not intend to preclude parties from contracting away their ability to seek class action relief under Truth in Lending Act); Taylor, 325 F. Supp. 2d at 1317-18 (same).

***

Accordingly, it is ORDERED as follows:

(1) Defendants Macon County Greyhound Park, Inc., McGregor Enterprises, Milton McGregor, and Victoryland's motions to compel arbitration of claims brought by plaintiffs Nancy Yarenko and Murray Baker (Doc. Nos. 27 and 75) are granted.

(2) Plaintiffs Yarenko and Baker are to arbitrate their claims in this litigation. Proceedings on their claims are stayed pending arbitration.

DONE, this the 13th day of June, 2012.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE